**Wayne H. HARROLD, Plaintiff,**

**v.**

**H. L. COBLE, J. F. Kirkpatrick, Leon G. Coble, Stuart Honaker, Kay Aylchick, individually and as Administrators of the "Profit Sharing Plan And Trust Agreement Of H. L. Coble Construction Company and Coble Contracting And Engineering Company," Defendants.**

**No. C-214-G-65.**

United States District Court
M. D. North Carolina,
Greensboro Division.

Dec. 5, 1966.

Lawrence Egerton, Jr., and W. Douglas Albright, Greensboro, N. C., for plaintiff.

G. Neil Daniels and C. T. Leonard, Jr., Greensboro, N. C., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWIN M. STANLEY, Chief Judge.

This is an action under the Welfare and Pension Plan Disclosure Act, 29 U.S.C. §§ 301–309, to recover the statutory penalty provided for in 29 U.S.C. § 308(b), by reason of the alleged failure of the defendants to disclose to the plaintiff, a participant or beneficiary, a description of the defendants' pension and profit-sharing plan.

The case was tried to the court without a jury. After considering the evidence offered by the parties, including stipulations and exhibits, and the briefs and oral arguments of counsel, the Court makes and files herein its Findings of Fact and Conclusions of Law, separately stated:

## FINDINGS OF FACT

1. The plaintiff, Wayne H. Harrold, is a citizen and resident of Guilford County, North Carolina.

2. The defendant, H. L. Coble, was at the time of the commencement of this action, a citizen and resident of Broward County, Florida. The defendants J. F. Kirkpatrick, Leon G. Coble, Kay Aylchick and Stuart Honaker are citizens and residents of Guilford County, North Carolina.

3. H. L. Coble is chairman of the board of H. L. Coble Construction Company; J. F. Kirkpatrick is president of H. L. Coble Construction Company; Leon G. Coble is vice president of H. L. Coble Construction Company; and Kay Aylchick is a payroll clerk employed by H. L Coble Construction Company. Stuart Honaker is an independent tax consultant with offices in the H. L. Coble Office Building, and frequently does work for H. L. Coble Construction Company. The individual defendants collectively comprise the administration committee of the pension and profit-sharing plan of H. L. Coble Construction Company and

were appointed to such committee by the Board of Directors of H. L. Coble Construction Company.

4. The profit-sharing plan of H. L. Coble Construction Company was established in January of 1952, when a profit-sharing plan and trust agreement was entered into between H. L. Coble Construction Company and Guilford National Bank of Greensboro, as trustee. Guilford National Bank was subsequently merged into Security National Bank, and the North Carolina National Bank, the successor to the merged banking institutions, is now the trustee of the amended profit-sharing plan and trust agreement of H. L. Coble Construction Company.

5. The purpose of the profit-sharing plan of H. L. Coble Construction Company is to provide retirement security for employees of the company, and the plan is financed entirely by the company.

6. The profit-sharing plan and trust agreement provides for the appointment by the Board of Directors of H. L. Coble Construction Company of a "Profit-Sharing Administration Committee," to serve without compensation at the pleasure of the Board. The committee is responsible for the general administration of the plan, and is charged with the responsibility of communicating the principal provisions of the plan to the employees of the company. The composition of the committee has been changed frequently since the inception of the plan in 1952.

7. The H. L. Coble Construction Company reserves the right, at any time and from time to time, to amend the plan and trust agreement in any manner it determines desirable, or to terminate the plan and trust agreement completely.

8. The defendant Honaker was first appointed to the Profit-Sharing Administration Committee by the Board of Directors of H. L. Coble Construction Company during the latter part of 1964, but was not advised of said appointment until sometime during the early part of 1965. He was chosen by the committee as its chairman at a meeting held on

May 4, 1965, and has acted in such capacity since that date.

9. The plaintiff was employed by H. L. Coble Construction Company on April 1, 1959, as an assistant to one of the executives of the company at its main office in Greensboro, North Carolina. He later took over the purchasing duties of the company and continued in that capacity until sometime in 1963. In the latter part of 1964, plaintiff was named vice president and director of H. L. Coble Construction Company, and placed in charge of its Greensboro office. He continued in that capacity until he resigned from the company on April 30, 1965.

10. During the time plaintiff was in charge of the Greensboro office of H. L. Coble Construction Company, copies of the profit-sharing plan and trust agreement were available in the main office of the company at Greensboro, North Carolina.

11. Prior to the termination of plaintiff's employment with H. L. Coble Construction Company, he discussed the provisions of the company's profit-sharing plan with the defendant Honaker. During this conference, plaintiff and Mr. Honaker went over a copy of the plan together, and Mr. Honaker furnished all information requested by the plaintiff.

12. On June 17, 1965, Mr. Honaker, as chairman of the Administration Committee, mailed to the plaintiff the following letter:

"Mr. Wayne H. Harrold
1805 Brookcliff Drive
Greensboro, North Carolina 27410

Dear Mr. Harrold:

The Profit Sharing Administration Committee, as recently reconstituted, has adopted a policy of notifying, by letter, all retired, disabled, or withdrawn employees of their rights under the Profit Sharing Agreement, and when their benefits may be expected.

Since you have raised some questions as to the percentage of your account you will receive, and when you are entitled to receive it, I am going into more detail than usual in citing the controlling provisions of the Trust Agreement.

According to company records you were employed on April 1, 1959, and resigned as of April 30, 1965. Under Article III (1) of the Agreement, as amended 9/8/59, you entered the Plan on December 31, 1960, having completed one year of continuous employment on April 1, 1960. Under the same Article, your participation was retroactive to April 1, 1960, the date you had completed one year of continuous employment.

Article VIII, as amended 9/8/59 relating to Benefits on Serverence of Employment, insofar as here pertinent, reads as follows:

'(1) If the employment with the Company of a participating employee who entered the Plan on the 31st day of December, 1959, or on a subsequent adjustment date, shall be severed for any reason other than retirement, disability, or death, such withdrawn employee shall not be entitled to receive any part of the amount credited to his account for (or on account of) the first full twelve months period of his continuous participation in the Plan (prior to his severance), but he shall be entitled to receive twenty per cent (20%) of the amount credited to his account (adjusted, as of the adjustment date next succeeding such severance, as provided in Article VI hereof) for each full twelve months period of his continuous participation in the Plan after that first full twelve months period and prior to and ending with the actual date of such severance, to a maximum of one hundred per cent (100%); and any balance remaining in the account of such withdrawn employee shall be forfeited by him.'

'(2) Any severance benefits to which any withdrawn employee of

the Companies may be entitled under the provisions of this Article VIII shall be payable to such withdrawn employee in one lump sum within sixty (60) days after the adjustment date next succeeding his withdrawal;'.

Paragraph (1) quoted above fixes the participation of a withdrawn employee at 20% of his account, as adjusted 'for each full twelve months period', less one, of his continuous participation in the Plan 'prior to and ending with the actual date of such severance, to a maximum of one hundred per cent (100%)'. As your period of continuous participation dates from April 1, 1960, to April 30, 1965, it is apparent that five full twelve months periods are involved. Since under the provisions of Paragraph (1) of Article VIII one year must be omitted, it appears that you have left four (4) full twelve months periods, which at 20% per year gives you 80% of your account as it stands after all necessary adjustments at December 31, 1965.

Paragraph (2) of Article VIII, quoted above, provides that the severance benefits to which a withdrawn employee may be entitled, shall be payable within sixty (60) days after the December 31 next succeeding his withdrawal. The reason for the delay is, of course, that he shares in the net income or net loss of the Trust for the full year, and consequently his account cannot be properly adjusted until the report of the Trustee is received, which is usually around the latter part of February or the early part of March.

I believe you are already aware that a lump sum payment of this nature qualifies for long term capital gains treatment in your Federal Income Tax

Return for the year in which it is received. It should be reported in Schedule D of your return as 'Lump sum payment from H. L. Coble Construction Company Profit Sharing

Trust upon termination of employment'.

If there is anything in this letter or in the Agreement itself which is not clear to you or which you would like to discuss, I shall be glad to go over over it with you at your convenience.

With kindest personal regards, I am

Very truly yours,

(S) Stuart F. Honaker
Stuart F. Honaker, Chairman
Profit Sharing Administration Committee"

13. On June 16, 1965, the plaintiff dispatched the following letter to the Administrator of the profit-sharing plan:

"Administrator, H. L. Coble Construction Company Profit Sharing Plan, and

H. L. Coble, Chairman of the Board
Leon G. Coble, Vice Chairman of the Board

James F. Kirkpatrick, President
Stuart Honaker

Dear Sirs:

I recently requested settlement of the benefits due me under the H. L. Coble Construction Company Profit Sharing Plan (or such correct official name as the plan may be designated) and was advised by Mr. Stuart Honaker that payment would not be made until an indefinite time in 1966. I have personal knowledge that this has not been the practice in the past. I was with H. L. Coble Construction Company for a number of years and feel strongly that it is only fair that this matter be settled promptly and in accordance with the Plan and prior practice.

As you know, I have requested information concerning the Plan and copies of the Plan as early as 1960. At a meeting attended by J. F. Kirkpatrick, Leon G. Coble, S. J. Walker, Jr., C. E. Moore, Jr., Edna Essex and myself on January 13, 1965, the matter of the Plan was discussed. At that time, I requested a copy of the Plan

and information relating to it and was advised that a copy of the information requested would not be given to me. I renewed my request and was advised by C. E. Moore, Jr., at that time that it would be furnished to me only if I demanded it. At that time, I demanded a copy of the plan and related information in connection with the Plan. To date, a copy of the Plan and related information has not been received by me.

At this time, I hereby renew my demand for a description of the Profit Sharing Plan of H. L. Coble Construction Company (by whichever name it is officially designated) and a copy of the latest annual report with respect to said Plan including, but not limited to, the following:

(1) The official name of the H. L. Coble Construction Company Profit Sharing Plan.

(2) A copy of the Profit Sharing Plan, any Trust agreement relating thereto and all amendments.

(3) The name and address of the Administrator (or Administrators) of the Plan and the Trustee (or Trustees) of the Plan; and official positions with respect to the Plan and their relationship, if any, with the H. L. Coble Construction Company, or any other subsidiaries or related companies or any of its employee organizations, or any other offices, positions, or employment held by them.

(4) The source of financing of the Plan.

(5) The procedures to be followed in presenting claims for benefits under the Plan and the remedies available under the Plan for the redress of claims which are denied in whole or in part.

(6) Complete information concerning the most recent annual report including a statement from an independent certified public accountant, a licensed public accountant, or duly sworn to by the Administrators.

(7) A detailed list including costs, present value, and percentage of total funds of all investments in securities or properties of the H. L. Coble Construction Company or employee organizations.

(8) A detailed list of all loans made to the H. L. Coble Construction Company, its officers, or other parties in interest.

Please send the foregoing information directly to me at 1805 Brookcliff Drive, Greensboro, North Carolina.

Very truly yours,
/S/ Wayne H. Harrold
Wayne H. Harrold"

14. The letter referred to in Paragraph 13 had not been received by Mr. Honaker at the time he dispatched the letter referred to in Paragraph 12.

15. On June 24, 1965, the defendant Honaker replied to plaintiff's letter of June 16, 1965, as follows:

"Mr. Wayne H. Harrold
1805 Brookcliff Drive
Greensboro, North Carolina    27410

Dear Mr. Harrold:

This will acknowledge receipt of your letter of June 16, 1965 in reference to your benefits under the H. L. Coble Construction Company Profit Sharing Plan. In the first paragraph of your letter you expressed the feeling that 'it is only fair that this matter be settled promptly and in accordance with the Plan and prior practice'.

In my letter to you of June 17, 1965, I quoted the provisions of the Plan applicable to your situation. It is the position of the Committee, as presently constituted, that it has no authority to act other than 'in accordance with the Plan'. If payments may have been made in the past on a basis other than that authorized in the Plan, it is a matter or regret, but in the opinion of the Committee that does not authorize it to act in any manner other than that specifically provided in the Plan.

Article IX (3) of the Plan reads as follows:

'No person shall have any interest in, or right to, any part of the assets of the Trust, or any rights under the Plan, except as and to the extent expressly provided in the Plan.'

In the third paragraph of your letter you list eight separate demands. I shall consider them in the order listed.

1. The Plan was established in 1952 under the title 'Profit Sharing Plan and Trust Agreement of H. L. Coble Construction Company and Coble Contracting and Engineering Company'. Although the latter corporation was dissolved on September 23, 1955, it appears that no action has been taken to eliminate its name from the title.

2. Copies of the Plan and Trust Agreement are not ordinarily furnished to participants. They are, however, available in this office at any time, and as I told you in my letter of June 17, I shall be happy to discuss any of the provisions in the original Plan or amendments with you at any time.

3. The Trustee of the Plan is the North Carolina National Bank. The administrators of the Plan are the five members of the Administration Committee. They are listed below with their relationship to the Plan and to H. L. Coble Construction Company.

|  | Committee | Company |
| --- | --- | --- |
| H. L. Coble | Member | Chairman of the Board |
| J. F. Kirkpatrick | Member | President |
| Leon G. Coble | Member | First Vice President |
| Stuart F. Honaker | Chairman | None |
| Mrs. Kay Alychick | Secretary | Paymaster |

4. The Plan is financed by payments from the profits of H. L. Coble Construction Company.

5. In the case of withdrawn employees there are no established procedures for presenting claims and no claims are necessary since the Plan itself provides the time and manner of payment. As for any possible redress when claims are denied in whole or in part, Article II (6) of the Trust Agreement provides in part that 'The determination of the Committee as to any disputed question under the Plan shall be conclusive upon all persons interested therein'.

6. Article XIII of the Trust Agreement provides that Trustee shall prepare an annual statement of its account and that this statement shall be open to inspection by all persons having an interest in the Trust for a period of 30 days after it is first made available. Although the period for examination of this document in the Trustee's office has long since expired, a copy is available in this office and we shall be happy to have you examine it at any time.

7. No part of the funds of the Trust are invested in securities or properties of the H. L. Coble Construction Company or any related organization or individual.

8. No loans are now outstanding or have ever been made to H. L. Coble Construction Company, its officers or other parties in interest.

Let me again assure you that it is the desire of the Committee to help you in any way possible as long as it does not require any action in contravention of the provisions of the Trust Agreement.

Yours very truly,

/S/ Stuart F. Honaker
Stuart F. Honaker, Chairman
Profit Sharing Administration
Committee"

16. On June 25, 1965, the plaintiff wrote the defendant Honaker as follows:

"Mr. Stuart F. Honaker, Chairman
Profit Sharing Administration Committee
415 North Edgeworth Street
Greensboro, North Carolina

Dear Mr. Honaker:

I appreciate your reply to my letter of June 16, 1965, but you failed to include any of the specific information which I requested.

Inasmuch as I feel that I am entitled to this information, I hereby renew my formal demand for all of the documents and information set forth in my letter of June 16, 1965. In addition thereto, I would also like specific information concerning the time and method of settlement with withdrawn employees in the past.

After I have received this information, I will then be in a position to understand the profit sharing program and will be glad to discuss it with you if I have any questions.

Very truly yours,

Wayne H. Harrold"

17. On July 1, 1965, the plaintiff again wrote the defendant Honaker as follows:

"Mr. Stuart F. Honaker, Chairman
Profit Sharing Administration
Committee
415 North Edgeworth Street
Greensboro, North Carolina

Dear Mr. Honaker:

I appreciate your letter of June 24, 1965. Although your letter was help-ful and answered some of the questions raised, I still have not received a copy of the plan and trust agreement as well as other information requested. Demand is hereby renewed for all information and documents previously requested but not yet furnished.

As advised, after I have received this information and had a chance to study it, I will be in a position to discuss the matter with you.

Very truly yours,

Wayne H. Harrold"

18. On July 7, 1965, the defendant Honaker wrote the plaintiff as follows:

"Mr. Wayne H. Harrold
1805 Brookcliff Drive
Greensboro, North Carolina

Dear Mr. Harrold:

In reply to your letter of July 1, 1965, in which you again make demand for certain documents, I have to advise you that it is not the policy of the Committee or the Company to furnish copies of these documents to participants in the Plan.

Let me reiterate, however, that these documents are available for inspection in this office and that I will be happy to discuss their provisions with you at any reasonable time.

Very truly yours,

/S/ Stuart F. Honaker
Stuart F. Honaker, Chairman
Profit Sharing Administration Committee"

19. On August 6, 1965, the plaintiff wrote the defendant Honaker as follows:

"Mr. Stuart F. Honaker, Chairman
Profit Sharing Administration
Committee
415 North Edgeworth Street
Greensboro, North Carolina

Dear Mr. Honaker:

I again renew my demand for the documents and information requested in my letter of June 16, 1965, with respect to the Profit Sharing Plan and Trust Agreement of H. L. Coble Con-

struction Company and Coble Contracting and Engineering Company.

It is not acceptable to me that these documents and the information requested be inspected in your office. As you know, the documents are technical in nature and would require considerable time to go through and understand. I trust you will supply me the information and documents requested by return mail.

Very truly yours,

Wayne H. Harrold"

20. Plaintiff's letter of August 6, 1965, to the defendant Honaker was the final correspondence exchanged between the parties prior to the institution of this action on November 24, 1965.

21. On September 1, 1965, there was delivered to all salaried employees and participants in the profit-sharing plan of H. L. Coble Construction Company a pamphlet entitled "Profit Sharing Plan" of the H. L. Coble Construction Company, which pamphlet sets forth in layman's language the purpose of the plan, a description of its operation, and an explanation of its most pertinent provisions. A copy of this pamphlet was received by the plaintiff in September of 1965, prior to the institution of this action.

22. At all times pertinent, the defendant Honaker exercised general supervision over the administration of the profit-sharing plan. However, he had no knowledge of the provisions of the Welfare and Pension Plan Disclosure Act, 29 U.S.C. §§ 301–309, prior to the institution of this action.

23. The evidence fails to disclose any intent or desire on the part of the defendants to deprive the plaintiff of any information concerning the profit-sharing plan of H. L. Coble Construction Company.

24. The fiscal year of the profit-sharing plan is the calendar year. The annual accounting for the plan is prepared by the trustee, North Carolina National Bank, immediately after the end of each calendar year.

25. The adjustment date immediately following plaintiff's resignation from H. L. Coble Construction Company was December 31, 1965, and payment of any benefits due the plaintiff under the plan was required to be made within 60 days thereafter. This procedure was set forth in the pamphlet describing the profit-sharing plan which was received by the plaintiff in September of 1965, and was specifically described in the defendant Honaker's letter of June 17, 1965.

26. The annual accounting of the profit-sharing plan for the year 1965 was furnished the company by the trustee between January 10 and 15, 1966. The accounting set forth the amounts which were due to terminated or withdrawn employees, and the North Carolina National Bank, as trustee, was subsequently notified by the company to send checks to such terminated or withdrawn employees, including the plaintiff, for the amounts due them.

27. By letter dated January 18, 1966, Claude Batkins, Vice President and Trust Officer of North Carolina National Bank, transmitted to plaintiff a check in the amount of $4,404.46, representing the amount due him as a terminated employee under the profit-sharing plan. The check was drawn on the account of "H. L. Coble Construction Company Profit Sharing Plan," and the following appeared on the face thereof:

"When properly endorsed and accepted as payment of the following account— payment of vested interest in Profit Sharing Plan."

28. The letter and check referred to in the preceding paragraph were received by the plaintiff on January 19, 1966. After receipt of the check, plaintiff telephoned the defendant Honaker and inquired as to the computation of his benefits and expressed the feeling that he had not received all that was due him. Mr. Honaker explained to the plaintiff the method by which his benefits had been computed, and subsequently prepared detailed computations showing exactly how plaintiff's benefits under the plan were determined.

The computations were furnished to the plaintiff during the early part of March, 1966. After receipt of the computations, the plaintiff had no further communication with any of the defendants regarding his benefits under the plan. On March 30, 1966, the plaintiff deposited the check in the Central Carolina Bank and Trust Company in Durham, North Carolina, and received the proceeds thereof.

29. There is no evidence that plaintiff suffered any injury or damage by reason of failure of the defendants to deliver to him a copy of the plan and the requested financial statement.

## DISCUSSION

No case has been cited, or found, dealing with the precise issues here presented. Consequently, the primary task of the Court is that of looking to the intent of Congress as expressed in the Act (29 U.S.C. §§ 301–309) and its legislative history. Serio v. Liss, 189 F.Supp. 358 (Dist.N.J.1960).

At the outset, the defendants strenuously argue that the Court is without jurisdiction to determine the controversy for the reason that H. L. Coble Construction Company, rather than the defendants, is the "administrator" of the profit-sharing plan and trust agreement. It is then reasoned that since 29 U.S.C. § 308(b) only renders the "Administrator" liable for non-disclosure, under no circumstances could the individual defendants be liable to the plaintiff. This argument must be rejected. In the first place, the individual defendants, as members of the profit-sharing administration committee, are charged with the responsibility of administering the plan and carrying out its provisions. It can logically be argued that they, rather than the H. L. Coble Construction Company, are the administrators. Secondly, and even more important, the plaintiff brought suit against the persons certified by Mr. Honaker, in his letter of June 24, 1965, as being the administrators of the plan. Since there

had been a failure to furnish plaintiff with a copy of the plan and trust agreement so that he could make an independent determination with respect to the identity of the administrator, the plaintiff was certainly entitled to rely and act upon the representation and certification made to him by Mr. Honaker.

The legislative history of the Welfare and Pension Plan Disclosure Act [1] reveals a congressional awareness that many welfare and pension benefit plans, affecting the security of millions of employees and their dependents, contained many abuses and weaknesses, and that a complete disclosure of the details of the operations of the plans would provide the most effective single deterrent against such abuses. U.S.Code Cong. and Adm.News, 1958, 85th Cong., Pages 4137–4210.

29 U.S.C. § 305, requires the publication of a description of welfare and pension benefit plans. 29 U.S.C. § 306, relates to the publication of annual reports, and the details of what such reports must contain. 29 U.S.C. § 307, requires the administrator of a plan, upon the written request of a participant or beneficiary, to deliver "a copy of the description of the plan (including all amendments and modifications thereto upon their effective date) and an adequate summary of the latest annual report, by mailing such documents to the last known address of the participant or beneficary making such request." And finally, 29 U.S.C. § 308 (b), the statute under which this action was instituted, renders an administrator of a plan who fails or refuses, upon the written request of a participant or beneficiary, to make publication to him, within thirty days of such request, of the information required by the Act, liable, in the Court's discretion, to such participant or beneficiary, in the amount of $50.00 a day from the date of such failure or refusal.

It is not controverted that the plaintiff made a written request to the defendants for a description of the plan and an annual report containing the

information required by 29 U.S.C. §§ 305 and 306, in accordance with the provisions of 29 U.S.C. § 307, and that the defendants failed to mail such documents to the plaintiff at his last known address. Under these circumstances, the Court, in its discretion, is permitted to award the plaintiff the penalty or forfeiture provided by 29 U.S.C. § 308(b).

■ As earlier noted, the matter of awarding the statutory penalty or forfeiture, or withholding such award, is a matter entrusted to the sound discretion of the Court. In exercising this discretion, it is deemed desirable to keep in mind the abuses which Congress sought to guard against, the injury, if any, suffered by the plaintiff, and the good faith of the defendants.

■ Before the plaintiff terminated his employment with H. L. Coble Construction Company, Mr. Honaker discussed with him the provisions of the plan and gave him all the information requested. In his letter of June 17, 1965, Mr. Honaker informed the plaintiff of the principal provisions of the plan, the benefits he was entitled to receive, and the approximate date the benefits would be subject to withdrawal. The letter concluded by assuring the plaintiff that if he desired additional information, Mr. Honaker would be glad to confer with him at his convenience. Again, on June 24, 1965, Mr. Honaker gave more detailed information with respect to the plan, and attempted to respond to all the questions raised by the plaintiff in his letter of June 16, 1965. The letter concluded by again assuring the plaintiff that Mr. Honaker desired to help him in any way possible. There can be no question but that Mr. Honaker felt that he was fully complying with all disclosure requirements. While the plaintiff's letter of June 16, 1965, is couched in the language of the statute, never at any time did the plaintiff disclose to Mr. Honaker that he was making his request pursuant to the requirements of the statute. It is perfectly evident that from at least June 16, 1965, until the date of the institution of this action, the plaintiff was fully aware of the statutory requirements with reference to disclosure. The evidence is equally clear that Mr. Honaker was ignorant of such requirement. While ignorance of the statute is no excuse, it does have a substantial bearing upon Mr. Honaker's good faith. If the personal conference between plaintiff and Mr. Honaker, and exchange of correspondence between them, did not comply with the spirit of the statute, the booklet of September 1, 1965, which was received by the plaintiff during the month of September, 1965, and prior to the institution of this action, clearly contains a description and the financial status of the plan. Actually, the information contained in the booklet was probably more understandable to the plaintiff than a copy of the trust agreement itself. It is also significant that the plaintiff was paid, well within the period provided by the plan, the full benefits due him. Under these and other attendant circumstances, any violation of the statute was purely technical. Consequently, it is concluded that plaintiff has failed to carry his burden of demonstrating any basis that would justify the Court, in the exercise of its discretion, in assessing any damages in the form of a penalty or forfeiture.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter.

2. The plaintiff is entitled to recover nothing of the defendant.

3. Each party shall bear his own costs.