W. Willard WIRTZ, Secretary of Labor, United States Department of Labor,

v.

GULF OIL CORPORATION.

Civ. A. No. 34235.

United States District Court
E. D. Pennsylvania.

March 22, 1965.

John W. Douglas, Asst. Atty. Gen., Drew J. T. O'Keefe, U. S. Atty., Joseph R. Ritchie, Jr., Asst. U. S. Atty., Harland F. Leathers, Atty., Dept. of Justice, James R. Beaird, Associate Counsel, for plaintiff.

John T. Clary, Philadelphia, Pa., for defendant.

KRAFT, District Judge.

The Secretary of Labor, United States Department of Labor (Secretary), brought this action against Gulf Oil Corporation (Gulf) for injunctive relief under the Welfare and Pension Plans Disclosure Act, as amended, 29 U.S.C. §§ 301–309 (Act). The case is before us on cross-motions for summary judgment.

The material facts are undisputed. Gulf is a corporation organized and existing under the laws of Pennsylvania, with executive offices in Philadelphia. It is concededly an employer engaged in commerce and in an industry or activity affecting commerce, within the meaning of § 3 of the Act, 29 U.S.C. § 302.

Since about 1939, a number of Gulf's employes at its Philadelphia Refinery have constituted a group insured under the "Blue Cross and Blue Shield Plans," which provides medical, surgical and hospital care and benefits. In the beginning, Gulf's paymaster, with Gulf's authorization, collected premium payments from group members and forwarded them to the Associated Hospital Service of Philadelphia (Blue Cross). In subsequent years, Gulf deducted the premiums from the employes' weekly pay and remitted them to the Blue Cross the following month. At some later date, Gulf began contributing one-third of the monthly premiums, within certain maximum and minimum limits not here material.

The Associated Hospital Service of Philadelphia is a non-profit corporation, a service organization, existing under Pennsylvania law for the purpose of arranging for prepaid hospitalization insurance coverage. The Medical Service Association of Pennsylvania is a non-profit corporation, a service organization, existing for the purpose of arranging

for prepaid surgical-medical insurance coverage. The Associated Hospital Service of Philadelphia is the agent for the Medical Service Association of Pennsylvania, performing the administrative functions of enrolling, maintaining enrollment records and billing subscribers for the monthly premiums due the latter organization.

The Associated Hospital Service of Philadelphia is audited and supervised by the Insurance Commissioner through the Insurance Department of Pennsylvania. Blue Cross and Blue Shield insurance coverage is available at group rates, which are less costly than individual rates, to employes of a common employer or employes of associated employers provided that the following conditions are met: (1) the group must consist of a minimum number of employes; (2) a percentage of the common employer's (or associated employers') employes must enroll in the plan; (3) the employer must deduct premiums from the employes' pay and remit them to the Associated Hospital Service of Philadelphia.

The Gulf program is entirely optional with the employe; Gulf exerts no pressure for or against participation therein. Moreover, the employe need not select Blue Cross coverage—Gulf will contribute on the same basis "as long as it is a plan with any insurance company." As we understand it, there are 1271 employes in the Gulf refinery, of whom all but 50 are covered by the Blue Cross-Blue Shield insurance.

Documents prepared by the Associated Hospital Service of Philadelphia are distributed to the employes at the Philadelphia refinery by Gulf's industrial relations department. These documents, specimens of which appear in the record, convey thorough and detailed information regarding the benefits available under the Blue Cross-Blue Shield plan. In addition, an employes handbook, prepared by Gulf and distributed by Gulf's industrial relations department, communicates to employes the availability of Blue Cross-Blue Shield insurance coverage and the basis on which Gulf contributes toward the cost of such benefits.

An employe desiring to become a member of the Gulf group signs an application therefor, which is sent by Gulf to the Blue Cross-Blue Shield. Upon acceptance, the application becomes a contract for admittance to the Gulf group. The employe also delivers to Gulf an authorization to deduct his portion of the premium from his pay. Gulf makes the deduction weekly and indicates it on the pay check. Gulf contributes its portion and remits the total amount of premiums monthly to the Associated Hospital Service of Philadelphia.

Gulf performs other functions in connection with the program. Through its mail room at the refinery, it mails communications from Blue Cross to Gulf employes. It fills out and returns various forms submitted to it from time to time by Blue Cross. It performs other services incidental to the program which need not be detailed for present purposes.

Gulf has no contractual relationship with Associated Hospital Service of Philadelphia, or with any other carrier of health or accident insurance. Gulf does not: determine eligibility of individual subscribers for receipt of benefits; process claims for benefits under the program; make determination of appeals; authorize payment of benefits; make payments to beneficiaries; select carrier or service organizations except to the extent that it might be necessary in order to avoid a multiplicity of carriers utilizing Gulf's payroll deduction.

■ The first issue presented is whether the Gulf program is an "employee welfare benefit plan," as defined in § 3(1) of the Act, 29 U.S.C. § 302(1):

"The term 'employee welfare benefit plan' means any plan, fund, or program which is communicated or its benefits described in writing to the employees, and which was heretofore or is hereafter established by an employer or by an employee organization, or by both, for the pur-

pose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death, or unemployment."

We think it clear beyond peradventure that the subject program was "communicated or its benefits described in writing to the employees" within the meaning of the Act. Perusal of the Blue Cross literature distributed to Gulf employes persuades us that no employe could entertain any doubt as to the benefits accruing under the program.

It is equally clear, we think, that the program was one "established by an employer." Gulf established this program in 1939, or thereabouts, when it agreed to collect premiums from employes and remit them to Blue Cross. Without this action on Gulf's part, group rates would have been impossible, since such rates are conditional on the employer's remittance of premiums. Moreover, as has been seen, the Gulf program has undergone modifications over the years, with payroll deductions, contributions by Gulf, etc. The program, as it has existed at all times here material, was, in every true sense, "established" by Gulf.

"Employer" is defined in § 3(4) of the Act, 29 U.S.C. § 302(4):

> "The term 'employer' means any person acting directly as an employer or indirectly in the interest of an employer in relation to an employee welfare or pension benefit plan, and includes a group or association of employers acting for an employer in such capacity."

There can be no question that Gulf acted as an employer in relation to the subject program. Apart from its other functions and activities incidental to the program, Gulf undeniably acted as an employer in making payroll deductions for premium payments. It acted as an employer in remitting premiums, as required by Blue Cross in the case of group coverage.

Lastly, the Gulf program was obviously established "for the purpose of providing for its participants or their beneficiaries * * * medical, surgical, or hospital care or benefits."

We find that the subject program meets every statutory test for an "employee welfare benefit plan." Gulf contends, however, that Congress' concern was not with the type of plan "where a contractual relationship exists between the employee and the insurance carrier," and that in such case "there is no chance for abuse." There are several answers to this. First, when the definition of an employee welfare benefit plan speaks of providing benefits "through the purchase of insurance or otherwise," it does not confine such purchase to a purchase of insurance by the plan, fund, or program. So long as the other requisites for a plan are present, the purchaser of insurance may be made by the employee. Such an arrangement was clearly contemplated by Congress. In the House Report, No. 2283 (1958), at p. 9, and in the Senate Report, No. 1440 (1958), at p. 7, it is stated:

> "Employee-benefit plans may be insured, funded through the medium of a trust or operated on a pay-as-you-go basis. Most employee welfare plan benefits are insured with a commercial insurance company or the Blue Cross-Blue Shield type of operation." U.S.Code Congressional and Administrative News 1958, p. 4143.

Second, programs of the type here involved are open, in some degree at least, to the same abuses of administration as led to the Congressional investigation of welfare plans, and the ensuing statutory regulation. A careless or unscrupulous employer, for example, might fail in his duty to remit premiums to the carrier, leaving employes shorn of all protection.

We conclude, therefore, that the Gulf program is an employee welfare benefit plan, within the meaning of the Act.

The second issue presented is whether Gulf is the "administrator" of the program, as that term is defined in § 5 of the Act, 29 U.S.C. § 304:

"(1) the person or persons designated by the terms of the plan or the collective bargaining agreement with responsibility for the ultimate control, disposition, or management of the money received or contributed; or

"(2) in the absence of such designation, the person or persons actually responsible for the control, disposition, or management of the money received or contributed, irrespective of whether such control, disposition, or management is exercised directly or through an agent or trustee designated by such person or persons."

In the "description" of the program which Gulf filed with the Secretary in 1959, pursuant to § 8(b) of the Act, 29 U.S.C. § 307(b), the party shown as the plan administrator was Associated Hospital Service of Philadelphia and Medical Service Association of Pennsylvania (Blue Cross-Blue Shield). Gulf presently contends that it acts merely as a "remitting agent," as a "conduit to facilitate the payment by the employees of their monthly premiums."

We think Gulf misconceives its function under the plan. It is, true enough, a remitting agent or a conduit, but it is much more. The reference to "money" in the definition of administrator is to money received by, or contributed to, the plan, and not money received by an insurer or service organization like Blue Cross-Blue Shield for the performance of plan functions. There is a clear distinction in the definition of "employee welfare benefit plan" between the "plan" and the method used to provide benefits under the plan, i. e., "through the purchase of insurance or otherwise." The definition of "administrator", supra, imports a trust relationship to the money received by, or contributed to, the plan. Gulf stands in such a relationship. Associated Hospital does not. The latter

receives money as its own,—as consideration for its contract of insurance. It is in no wise responsible for the control, disposition, or management of money belonging to the plan.

The conclusion that Gulf is the administrator of the plan is fortified by various other provisions of the Act. Section 7(b), 29 U.S.C. § 306(b), requires that information required to be reported in the annual report "shall be sworn to by the administrator, or certified to by an independent certified or licensed public accountant, based upon a comprehensive audit * * * but nothing herein shall be construed to require such an audit of the books or records of any * * * insurance company, or other institution providing an insurance * * function for the plan * * *."

Section 7(g) of the Act, 29 U.S.C. § 306(g), provides:

"If some or all of the benefits under the plan are provided by an insurance carrier or service or other organization, *such carrier or organization shall certify to the administrator of such plan* * * * such reasonable information determined by the Secretary to be necessary to enable such administrator to comply with the requirements of this chapter." (Emphasis supplied)

Other provisions, as well as the legislative history of the Act, might be cited to indicate that an insurance carrier or service organization providing insurance functions for a plan is not the person or persons constituting the plan administrator, but we need not labor the point.

After due consideration of the able and comprehensive arguments of counsel, oral and written, and our independent investigation of the issues, we are impelled to the conclusion that (1) the Gulf program is an "employee welfare benefit plan," within the meaning of the Act; (2) that Gulf is the "administrator" of the plan, as that term is defined in the Act; and (3) that the plaintiff is, in consequence, entitled to the injunctive relief sought.

## ORDER

Now, March 22nd, 1965, it is ordered that:

1. Plaintiff's motion, to which defendant assented, to strike the 2nd, 3rd and parts of the 4th and 5th paragraphs of the affidavit of Mr. Warne of defendant, Gulf Oil Corporation, is granted.

2. Defendant's motion for summary judgment be, and it is, denied.

3. Plaintiff's cross-motion for summary judgment be, and it is, granted.

4. Counsel shall submit an appropriate order for injunctive relief within 30 days.