Joseph W. HALES et al., Appellants,

v.

WINN–DIXIE STORES, INC., Appellee.

No. 73–1153.

United States Court of Appeals,
Fourth Circuit.

Argued June 6, 1973.

Decided May 8, 1974.

Concurring and Dissenting Opinion
June 7, 1974.

Addendum July 12, 1974.

---

L. Philip Covington, Garner, N. C., for appellants.

James L. Newsom, Durham, N. C. (Newsom, Graham, Strayhorn, Hedrick, Murray & Bryson, Durham, N. C., on brief), for appellee.

Before WINTER and WIDENER, Circuit Judges, and KAUFMAN, District Judge.

FRANK A. KAUFMAN, District Judge.

In an unverified two-count complaint, four former employees of a subsidiary of Winn-Dixie Stores, Inc. (Winn-Dixie) seek under Count I damages[1] against

---

1. Plaintiffs also seek to proceed in a class action and to obtain declaratory and injunc-

tive relief. No issues with regard to any of those matters are before this Court at this

Winn-Dixie for failure to make payments to them allegedly due under the "Employers Profit Sharing Program of Winn-Dixie Stores, Inc." (Program) and under Count II recovery under 29 U.S.C. § 308(b) for Winn-Dixie's alleged failure to provide statutorily required information concerning that Program. 29 U.S.C. § 308(b), a section of the Welfare and Pension Plans Disclosure Act (Act), 29 U.S.C. §§ 301–309, provides:

> (b) Any administrator of a plan who fails or refuses, upon the written request of a participant or beneficiary covered by such plan, to make publication to him within thirty days of such request, in accordance with the provisions of section 307 of this title, of a description of the plan or an annual report containing the information required by sections 305 and 306 of this title, may in the court's discretion become liable to any such participant or beneficiary making such request in the amount of $50 a day from the date of such failure or refusal.

Plaintiffs invoke federal jurisdiction under Count I pursuant to 28 U.S.C. § 1332(a)(1),[2] and under Count II pursuant to 28 U.S.C. § 1355 and 29 U.S.C. § 308(c).[3] The District Court entered summary judgment for Winn-Dixie on both counts, holding: (1) that, as to Count I, the undisputed record shows that no one of the four employees has more than $10,000 in controversy and thus diversity jurisdiction is lacking with regard thereto; and (2) that, as to Count II, Winn-Dixie is not an "administrator" of the Program as that term is defined in 29 U.S.C. § 304(b)(1) and thus is not liable for failing to provide

information concerning that Program under 29 U.S.C. § 308(b).

## I

It is first incumbent upon us to discuss herein the basis for jurisdiction as to Count II. 28 U.S.C. § 1355 provides:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress.

No jurisdictional amount requirement exists with regard to Section 1355. *See* Woods v. Kern, 87 F.Supp. 383, 384 (E. D.Pa.1949); Sampson v. Thomas, 76 F. Supp. 691, 693 (E.D.Mich.1948); Powell v. Rhine, 71 F.Supp. 953, 954 (M.D.Pa. 1947). *See also* Daniel v. First National Bank, 227 F.2d 353, 354, reh. denied, 228 F.2d 803 (5th Cir. 1956), citing at 227 F.2d 354 n. 2, First National Bank v. Morgan, 132 U.S. 141, 144, 10 S. Ct. 37, 33 L.Ed. 282 (1889). However, in order for jurisdiction in this case to exist under Section 1355, 29 U.S.C. § 308(b) must permit a "fine, penalty, or forfeiture" as those words are used in Section 1355. No case known to this Court holds that Section 1355 jurisdiction exists with regard to any Section 308(b) claim on the ground that that latter section permits the imposition of a 'fine, penalty or forfeiture' within the meaning of Section 1355.[3A] Rather clearly, Section 308(b) does not call for any "fine" or "forfeiture". It may appear at first blush to relate to the imposition of a "penalty". But the case law

---

time, and this Court expresses no views in connection therewith.

2. 28 U.S.C. § 1332(a)(1) provides:
 (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—
 (1) citizens of different States;
 \* \* \* \* \*

3. *See* the discussion *infra* in the body of this opinion.

3A. In Harrold v. Coble, 261 F.Supp. 29, 38 (M.D.N.C.1966), aff'd, 380 F.2d 18 (4th Cir. 1967), the District Court did describe an issue pending in that case with regard to Section 308(b) as "the matter of awarding the statutory penalty or forfeiture". But that comment was not made in connection with any analysis of the jurisdictional requirements of Section 1355.

raises grave doubts with regard thereto. Section 308(c) permits actions relating to Section (b) to be brought in "any court of competent jurisdiction". Those words, as they appear in Section 216 of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., providing for liquidated damages, have been construed to vest concurrent jurisdiction in state as well as federal courts, Mid-Continent Pipe Line Co. v. Hargrave, 129 F.2d 655, 659 (10th Cir. 1942); Keen v. Mid-Continent Petroleum Corp., 58 F.Supp. 915, 919 (N.D.Iowa 1945), aff'd, 157 F.2d 310 (8th Cir. 1946), and also as providing for "compensation, not a penalty". Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 583, 62 S.Ct. 1216, 86 L. Ed. 1682 (1942). Further, it is to be noted that in Currie v. Flack, 190 F.2d 549, 550 n. 1 (1st Cir. 1951), Judge Magruder, citing in support (at 553) Judge Maris' opinion in Fields v. Washington, 173 F.2d 701 (3d Cir. 1949), and dealing with a provision for liquidated damages in the Housing and Rent Act of 1947, wrote:

* * * Appellant quite properly does not rely upon this section [28 U. S.C. § 1355]. The tenant's action for damages by way of compensation for the injury suffered by him individually is not a proceeding for the recovery of a "penalty" within the meaning of 28 U.S.C. § 1355. Fields v. Washington, 3 Cir., 1949, 173 F.2d 701, 703. It if were so regarded, then consistently with § 1355, the federal district courts would have jurisdiction exclusive of the courts of the states. But under § 205 of the Housing and Rent Act, the tenant may sue "in any Federal, State, or Territorial court of competent jurisdiction".

The tests for determining whether a statute authorizes the imposition of a "penalty" are set forth in Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L. Ed. 1123 (1892), and have been subsequently discussed in other cases including Porter v. Montgomery, 163 F.2d 211 (3d Cir. 1947); McCrae v. Johnson, 84 F.Supp. 220 (D.Md.1949) (Chesnut, J.).

"The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual." Huntington v. Attrill, *supra* at 668. In Fields v. Washington, *supra* at 703, the importance of who sues and who collects and retains any judgment is stressed. And in Porter v. Montgomery, *supra* at 215, a distinction is drawn between damages which "must flow out of the wrong and be its natural and proximate consequence" and a "penalty [which] need have no causal connection with the wrong inflicted".

 In this case, it is not necessary to determine whether Section 308(b) authorizes the imposition of a penalty. This is so because although not asserted by plaintiffs, jurisdiction exists as to Count II under 28 U.S.C. § 1337. That section provides:

The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

No jurisdictional amount requirement exists as to Section 1337. 1 Barron & Holtzoff, Federal Practice & Procedure § 38, pp. 200–03 (Wright ed. 1961); 7B J. Moore, Federal Practice J.C. 518 (1966), and cases cited thereat. The Welfare and Pension Plans Disclosure Act, 29 U.S.C. §§ 301–309, imposes a duty upon the administrator of a plan subject to that Act. The imposition of that duty in favor of a person employed by another engaged in commerce or whose activities affect commerce was enacted by the Congress pursuant to the commerce clause of the Federal Constitution. In 29 U.S.C. § 301(a) the Congress stated its finding that pension plans have become "an important factor in commerce", and that it is in the interest of the "free flow of commerce" that disclosure of the terms of such plans be made. In 29 U.S.C. § 301(b) the Congress declared that it is the policy of the Act "to protect interstate commerce". The imposition of duties running in fa-

vor of such persons has been held, in connection with other statutes, to constitute an "Act of Congress regulating commerce" within the meaning of Section 1337. In Imm v. Union R. Co., 289 F.2d 858, 860 (3d Cir.), cert. denied, 368 U.S. 833, 82 S.Ct. 55, 7 L.Ed.2d 35 (1961), Judge Goodrich, in holding that the Federal Employees' Liability Act was an act "regulating commerce" within the meaning of 28 U.S.C. § 1337, quoted from and adopted Professor Charles Bunn's view that " '[a]cts regulating commerce' [as that phrase is used in Section 1337] are coming rapidly to mean all acts whose constitutional basis is the commerce clause". *See also* Ballard v. Moore-McCormack Lines, Inc., 285 F.Supp. 290 (S.D.N.Y.1968), holding similarly as to the Jones Act. Lieberman v. Cook, 343 F.Supp. 558 (W.D.Pa. 1972), and Moyer v. Kirkpatrick, 265 F. Supp. 348 (E.D.Pa.1967), aff'd per curiam, 387 F.2d 955 (3d Cir. 1968), are not to the contrary. Those cases hold only that the Welfare and Pension Plans Disclosure Act does not itself give rise to any cause of action other than one challenging the administrator's exercise of his disclosure duties. Thus, any failure to comply with the provisions of the Program, as alleged in Count I in this case, does not present, under 28 U.S.C. § 1331, claims "arising under" that Act. McCorkle v. First Pennsylvania Banking and Trust Co., 459 F.2d 243 (4th Cir. 1972); Barlow v. Marriott Corporation, 328 F.Supp. 624 (D.Md.1971). However, claims, such as those stated in Count II, which relate to a duty of disclosure to an employee, do arise under the Welfare and Pension Plans Disclosure Act, and constitute assertions of federally created rights which have been created for the purpose of "regulating commerce" as those words are used in Section 1337. Thus, regardless of the absence of the jurisdictional amount under Section 1331(a), or whether or not jurisdiction exists under Section 1355, jurisdiction as to Count II is present pursuant to Section 1337. Upon remand the District Court shall afford to plaintiffs, pursuant to 28 U.S.C. § 1653, the opportunity timely to amend their jurisdictional allegations with respect to Count II by alleging jurisdiction as to that count, under 28 U.S.C. § 1337.

## II

The Program of Winn-Dixie and its subsidiaries (hereinafter sometimes called "the Employers") relates to certain qualified participating employees. The four plaintiffs in this case fall within that group. The Employers contribute funds to a trust fund and retain no right to assert any claim to ownership over any of the assets of the trust fund. The Program provides for its administration by a Profit Sharing Committee (Committee), composed of from three to seven members, the majority of whom are required to be participating employees. All Committee members are appointed and subject to removal by Winn-Dixie's Board of Directors. Although all monies contributed to the Program are paid to a trust fund, the Committee rather than the Trustees seems to play the primary role in administering the Program. Among the extensive powers, duties and responsibilities of the Committee are allocation of forfeitures and of contributions made by each employer to participating employees; allocation of annual profits or losses from the trust fund to the accounts of participants; establishment of a trust fund contingency account to provide against losses or certain other costs; determination of whether participating employees should forfeit their rights because of misconduct; notification of all employees of the Program's existence and its general provisions; directing the trustees of the trust fund to make certain investments; keeping various records and informing employees annually of their trust fund accounts; and determining the manner in which employee accounts should be distributed. It is also important to note that the Program gives Winn-Dixie's Board of Directors the power to appoint and remove Committee members as well as the trustees of the trust fund, and to amend,

modify, or even terminate both the Program and the trust fund [4] and to amend the trust [5] from time to time.

29 U.S.C. § 308(b) exposes, subject to the discretion of the Court, "any administrator" of a welfare and pension plan such as the Program involved in this case, who fails or refuses upon written request of a participant to make publication to him within thirty days of such request of a description of the plan and an annual report containing information required by statute, to a penalty of $50 a day from the date of such failure or refusal. The term "administrator" is defined in 29 U.S.C. § 304(b)(1) as follows:

(b) The term "administrator" whenever used in this chapter, refers to—

(1) the person or persons designated by the terms of the plan or the collective bargaining agreement with responsibility for the ultimate control, disposition, or management of the money received or contributed; * * *

In Count II of the complaint, plaintiffs allege "[t]hat more than thirty (30) days prior to the filing of this action each plaintiff has individually requested in writing from the defendant a copy of the description of said plan [i. e., the Program], including all amendments and modifications thereto" and "[t]hat defendant, as administrator of said plan, has failed and refused to provide the requested information to the

plaintiffs in accordance with the disclosure provisions contained in the Act", i. e., 29 U.S.C. § 308(b). Thus, plaintiffs allege that on the date they filed the complaint none of them had received the requested information. However, none of plaintiffs has stated in any document, verified or unverified, filed in this case on what specific date or from what specific person he requested such information, or the mode or content of any such request made by him, except that one of the four plaintiffs, Hales, in an affidavit filed in this case, has stated:

That in May of 1972, in a further attempt to determine his rights under defendant's profit sharing plan, he requested in writing from Mr. James Cameron, Vice-Chairman of the defendant's Profit Sharing Committee, a copy of the plan. That he has not received said copy as of this date, but instead received a letter from Mr. Cameron advising him that such a copy was available for him to examine at the Committee headquarters in Jacksonville, Florida.

Nor has any one of the four plaintiffs stated the precise number of days for which he seeks the award of the $50 per day amount set forth in 29 U.S.C. § 308(b).

The District Court concluded that Winn-Dixie was not the "administrator" of the Program within the meaning of Section 304(b)(1), concluding that the Program designates the Committee as

---

4. Section 8.1 of the Program provides:

The Program shall be administered by a Profit Sharing Committee to be composed of not less than three (3), nor more than seven (7) persons, the majority of whom shall be participating employees, who shall be appointed from time to time by the Board, shall be subject to removal by the Board and shall serve until their successors shall have been appointed and qualified.

5. Section 9.1(b) of the Program provides in part:

The Company shall have the right to amend or modify this Program and/or the Trust Instruments at any time and from time to time and to such extent as it may deem advisable. * * *

Section 10.3 of the Program provides:

The terms and form of such Trust Instruments may be changed and amended from time to time by resolution adopted by a majority vote of the Board; PROVIDED, HOWEVER, that no such amendment or change shall increase the duties or responsibility of the trustee named therein unless such trustee has consented thereto in writing. The trustee named in either or both of such Trust Instruments may be replaced by one or more trustees selected by the Board, and the trustee or trustees so named may be changed from time to time by the Board. Persons associated with the Employers may act as such trustee or trustees.

having responsibility for the ultimate control, disposition or management of the money received or contributed to the Program and that the Program places a duty on the Committee to "[n]otify all employees in writing of the existence and general provisions of the Program . . . ." The District Court also commented upon Hales' statement in his affidavit that he directed his request for information to "Mr. James Cameron, Vice-Chairman of the defendant's Profit Sharing Committee", and not to the defendant, Winn-Dixie.

Winn-Dixie's power, specifically given by the terms of the Program, to appoint and to remove Committee members and trustees of the trust fund and to amend, modify, or terminate the Program and trust instruments related thereto gives it ultimate control over how the Program monies will be managed and disposed of. If Winn-Dixie does not approve of the way the Program monies are being managed and disposed of, it may either change the terms of the Program or trust instruments or replace existing Committee members and trustees with persons more to Winn-Dixie's liking. Thus, Winn-Dixie seems clearly to fall within the language of Section 304(b)(1) as the person designated by the terms of the Program "with responsibility for the *ultimate* control, disposition, or management" of the Program monies received or contributed. (Emphasis supplied). Accordingly, this Court concludes that, consistent with the express policies and remedial purposes of the Act, a corporate employer is itself the "administrator" within the meaning of Section 304(b)(1) when it reserves to itself powers over welfare and pension fund plans such as Winn-Dixie possesses under the Program. *Cf.* Wirtz v. Gulf Oil Corp., 239 F.Supp. 483, 486 (E.D.Pa. 1965).[6] Harrold v. Coble, 261 F.Supp. 29, 38 (M.D.N.C.1966), aff'd, 380 F.2d 18 (4th Cir. 1967), is not to the contrary.

---

6. Young v. Cudahy Packing Co., 50 C.C.H. Lab.Cas. ¶ 19,362 (N.D.Ga.1964), concluded that a corporate defendant sued under Section 308(b) was not administrator of the plan in question. In that case, it appears that the sole power the corporate defendant had over the plan in question was the appointment of members to a Pension Board which exercised extensive control over the plan. Thus, *Young* does not seem inconsistent with the interpretation of the word "administrator" in this case. The Department of Labor has put out (4 Lab.L.Rep.No.7739, p. 12,837 (1962) the following guidelines to help persons determine whether they are "administrators" under the Act:

Among those who may be responsible as administrators of plans are:

Employers
Associations of employers
Employee organizations (unions)
Employee beneficiary associations
Joint labor-management boards of trustees
Boards of trustees or committees other than joint labor-management boards or committees.

Ordinarily, none of the following is the administrator:

1. Paid administrator, who is delegated certain responsibilities in connection with *day-to-day* management of the plan.

2. Pension committee, which is delegated certain responsibilities in connection with determining eligibility and interpreting the terms of the plan.

3. Insurance company, which provides insurance coverage for participants.

4. Corporate trustee, which is delegated certain responsibilities for the safekeeping of assets or investments thereof.

5. Individual officer or employee of an employer, who is delegated certain responsibilities for day-to-day management of a plan.

Although those guidelines are not meant to be conclusive on the issue of who is the "administrator" under the Act, it is to be noted that the Department has listed an employer as a person who may be the "administrator" and listed a pension committee, delegated certain responsibilities in connection with determining eligibility and interpreting the terms of a pension plan, as ordinarily not the "administrator". In this case, the Committee does have duties in connection with determining eligibility and interpreting the Program. See Art. V, § 5.4; Art. VII, § 7.-4; Art. VII. Thus, under the Department's guidelines, it appears the Committee would not ordinarily be deemed the "administrator" of the Program thereby strengthening the inference that Winn-Dixie is the "administrator". Moreover, in this case, special attention must be given to the reserved powers of Winn-Dixie under the Program. In that connection, see n. 5 *supra*.

In that case, an action was brought under 29 U.S.C. § 308(b) against the members of a profit-sharing administration committee which administered the pension and profit-sharing plan of the H. L. Coble Construction Company (Coble). That committee was responsible for the general administration of the plan and was also charged with the responsibility of communicating the principal provisions of the plan to the employees of Coble. However, the board of directors of Coble appointed the committee members who served at the board's pleasure and also reserved the right at any time to amend the plan, and a trust agreement related thereto, in any manner the board deemed desirable, or to terminate the plan and trust agreement completely. The defendant committee members contended the Coble rather than the Committee was the "administrator" of the plan under Section 308(b). The District Court rejected that argument for the following two reasons (at 37):

> * * * In the first place, the individual defendants, as members of the profit-sharing administration committee, are charged with the responsibility of administering the plan and carrying out its provisions. It can logically be argued that they, rather than the H. L. Coble Construction Company, are the administrators. Secondly, and even more important the plaintiff brought suit against the persons certified by Mr. Honaker [a committee member], in his letter of June 24, 1965, as being the administrators of the plan. Since there had been a failure to furnish plaintiff with a copy of the plan and trust agreement so that he could make an independent determination with respect to the identity of the administrator, the plaintiff was certainly entitled to rely and act upon the representation and certification made to him by Mr. Honaker.

Thus, the District Court held that the members of the administration committee of Coble were estopped to deny that they were the "administrators". But the District Court in *Coble,* after so holding, refused, in the exercise of its discretion, to award any statutory penalty under Section 308(b) finding that Mr. Honaker had furnished certain information to plaintiff and that "any violation of the statute [29 U.S.C. § 308(b)] was purely technical" (at 38). On appeal by the plaintiff, this Court, finding no abuse of discretion by the Court below, affirmed in a per curiam opinion.

■ The fact that in this case Hales made demand on the Vice-Chairman of the Committee and not on the corporate defendant itself does not, so far as the record before this Court discloses, relate to the other three plaintiffs; nor does it, in and of itself, bar Hales' Section 308(b) claim against Winn-Dixie. However, it will be relevant, in connection with the existence or nonexistence of the $10,000 jurisdictional amount under Count I, to establish upon remand the date of Hales' request for information and the passage, or lack of passage, of the thirty-day period under Section 308(b).[7]

### III

■ In Count I of the complaint, plaintiffs each respectively complain that they have been improperly denied amounts due to them under the Program. Diversity jurisdiction is alleged to exist under 28 U.S.C. § 1332(a).[8] With respect to Count I, it is necessary to review what the record in this case does and does not disclose as to the claims of each of the former employees, Hales, Bridges, Eatmon and Tart, including the amounts of each of the four separate claims since those four amounts may not be aggregated for purposes of

---

7. *See* the discussion *infra* as to aggregation of Count I and Count II claims to satisfy the $10,000 jurisdictional requirement as to Count I.

8. Federal question jurisdiction under 28 U.S. C. § 1331 is not alleged as to Count I. Nor does it exist. *See* the discussion in the body of this opinion at pp. 840 and 841, *supra.*

determining the existence or nonexistence of the $10,000 jurisdictional amount under Section 1332(a)(1). Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). *See* Hughes v. Encyclopedia Britannica, Inc., 199 F.2d 295 (7th Cir. 1952). *Cf.* Zahn v. Int'l Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).

In Count I, Eatmon and Tart allege they are owed respectively $4850.00 and $2961.69 under the Program. The record would appear to indicate that the maximum amount Bridges may be able to recover under Count I is $5788.69.[9] Thus, the individual claims asserted by those three plaintiffs under Count I do not seem by themselves to meet the $10,000 jurisdictional amount requirement of 28 U.S.C. § 1332(a).

Hales alleges in Count I that he is owed more than $10,000 from Winn-Dixie under the Program. Hales also has stated in an affidavit that he expected to be credited with $12,000 under the Program when he terminated his employment with Winn-Dixie because of various representations made to him by agents and officials of Winn-Dixie and by the latter's unspecified official publications, and that he honestly believed at the time he filed this suit that the amount in controversy between himself and Winn-Dixie exceeded $10,000. The record in this case shows that under the express terms of the Program, if not changed by equitable reformation or otherwise, Hales was entitled to $8631.36. The record also seems to indicate that without Hales' authorization or request, but seemingly in accord with the terms of the Program, the Committee purchased and sent to Hales an annuity contract costing $8631.36, presumably to discharge any liability to Hales under the Program.

Writing for a unanimous Supreme Court in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938), Mr. Justice Roberts stated:

 \* \* \* The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made *in good faith.* It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. [Footnotes omitted.]

 Under Count I, Hales alleges he was due more than $10,000, apparently, from argument presented to this Court, either on a theory of quasi contract or pursuant to equitable reformation of the Program's terms. Thus, Count I does not facially disclose to a "legal certainty" that Hales may not recover more than $10,000. Further, nothing in the record before this Court sets forth to any legal certainty that Hales is entitled only to $8631.36 or only to the annuity policy mailed to him; or that Hales is not entitled to claim additional amounts

9. In the unsworn complaint, while Bridges claims $10,995.00, he also states $5145.00 has been paid to him. Attached to defendant's unsworn answer is an agreement between the Committee and Bridges stating Bridges' agreed vested interest under the Program to be $5788.69. However, there is no affidavit by anyone, or any agreement by Bridges, as to the status of that agreement, *i. e.,* its authenticity, whether it bars any assertion of a claim by Bridges inconsistent with it, etc.

under alleged representations and undertakings by or on behalf of Winn-Dixie. Under the test stated in St. Paul Mercury Indemnity Co. v. Red Cab Co., *supra* at 289, this Court concludes that the District Court should not have granted summary judgment against Hales under Count I for failure to meet the $10,000 jurisdictional requirement under 28 U.S.C. § 1332(a). *See also* C. Wright, Law of Federal Courts § 33 at 111 (2d ed. 1970).

■ Additionally, and alternatively, even if it is determined on remand that Hales' claim under Count I *ab initio* is limited to $8631.36 and that to a "legal certainty" his Count I claim is "really for less than" [10] $10,000, Hales may attempt to meet Section 1332(a)'s $10,000 jurisdictional requirement by adding to his diversity claim under Count I the amount of the recovery he is seeking under Count II. *See* Stone v. Stone, 405 F.2d 94, 96 (4th Cir. 1968); 6 Wright & Miller, Federal Practice and Procedure § 1588, at pp. 805–06 (1972). Counts I and II *each* involve claims which clearly qualify under Section 1332(a) but for the jurisdictional amount requirement. Thus, the aggre-

gation of those claims constitutes aggregation of diversity claims. The fact that Section 1337 jurisdiction is independently present as to Count II is, in that regard, incidental.

The maximum amount that Hales, or any other plaintiff in this case, can possibly seek under 29 U.S.C. § 308(b) is not presently known or even claimed by Hales or any other plaintiff herein in the light of their failure to allege sufficient details relating to their requests for information under that section. It may well be that the aggregation of the claims of each plaintiff under the two counts of the complaint exceeds $10,000. While the chances are less that Bridges, Eatmon and/or Tart as compared with Hales will be able to establish that they as individuals are claiming $10,000 in the aggregate under both counts, nevertheless, they should each be given the opportunity so to do. While many of the problems plaintiffs face in this appeal are of their own making, the policies which underlie and govern the application of the Welfare and Pension Plans Disclosure Act require that plaintiffs be accorded the liberal and flexible opportunity inherent in this Court's remand as to both Counts I and II.[11]

10. St. Paul Mercury Indemnity Co. v. Red Cab Co., *supra* at 289.

11. Joinder of claims under Rule 18(a) does not present any special jurisdictional difficulties in cases in which *ordinary subject matter jurisdiction requirements are satisfied* regarding each of the asserted claims. For example, in an action in which A of State X sues B of State Y and claims $12,000 for injuries sustained in an automobile accident and $11,000 for back rent, statutory subject matter jurisdiction requirements clearly are met since diversity of citizenship exists between A and B and the requisite jurisdictional amount is in controversy with respect to each claim. Similarly, when A of State Z sues B who also is of State Z for patent infringement and a violation of A's civil rights, both of A's claims meet the standards of federal question jurisdiction, no jurisdictional amount being required.

However, if in the first example A's claims against B involve only $6,000 for the automobile accident and $8,000 for back rent, the question arises whether A

may combine the damage amount requested for each claim in order to satisfy the amount in controversy requirement. The general rule is that in an action involving a single plaintiff and a single defendant, when the basis of jurisdiction is diversity of citizenship or when each of the claims sought to be joined involves a federal question, a party may aggregate all the claims he has against an opposing party in order to satisfy the requisite jurisdictional amount.[78] * * *

78. [The lead citation in this footnote is to the *Stone* case.]

* * * * *

In the second example given earlier, A joined two federal claims. But what if A had joined his federal claim for patent infringement with a nonfederal claim for unfair competition? The general rule is that when the basis of jurisdiction is a federal question, a party may not join a separate and distinct nonfederal claim that *does not independently satisfy jurisdictional requirements*. But, if the state claim is sufficiently related to the federal claim, as

## IV

 There remains the question as to whether in any event plaintiffs' Count I diversity claims are maintainable under the theory of pendent jurisdiction. The answer to that question is "no". The record establishes beyond

> when it arises out of the same transaction or occurrence, the federal court has discretion to exercise pendent jurisdiction over the state claim.
>
> &ast; &ast; &ast; &ast; &ast;
>
> Finally, it should be noted that the pendent jurisdiction doctrine may be applied when the jurisdictional amount of one of the claims sought to be joined under Rule 18(a) is less than that required by statute. In the true single party action the pendency question will not arise because, as stated at the outset, plaintiff will be allowed to join as many claims as he has, without regard to the amount involved in each claim, if he asserts at least one claim that meets the jurisdictional amount requirement or will be permitted to aggregate in order to satisfy the amount in controversy requirement. However, some courts have been more concerned about the need for a jurisdictional base for each claim when plaintiff is asserting his claims in varying capacities. When faced with that problem, these courts have held that claims that allege the requisite amount may support the lesser claims. &ast; &ast; &ast; It should be noted, however, that unlike the aggregation of totally unrelated claims, none of which meet the requisite amount, a claim joined under the pendent jurisdiction doctrine is brought into the action only when the court's power over the main claim gives it jurisdiction over the entire controversy and the pendent claim bears a strong factual relationship to the main claim. [6 Wright & Miller, Federal Practice and Procedure § 1588, at pp. 805, 807, 815–16; footnotes omitted except for the reference to n. 78; emphases supplied.]

In this case, as related in the body of the opinion, there is an independent Section 1332(a) jurisdictional base with regard to the claims of each of the plaintiffs, under Count II as well as under Count I, insofar as the element of diversity of citizenship is concerned. Accordingly, each of the plaintiffs should be given the opportunity to establish whether, by means of aggregation, he can meet the $10,000 jurisdictional requirement of Section 1332(a). If any of the plaintiffs is so able to establish the existence of the $10,000 requirement, he will of course have no need to establish the existence of pendent jurisdiction as to Count I.

doubt that the Count I and Count II claims do not grow out of a "common nucleus of operative fact". United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The Count II claims relate to alleged failure to furnish the information re-

> If, however, jurisdiction by way of aggregation is not established, this Court is of the opinion that jurisdiction as to Count I cannot be established under the doctrine of pendent jurisdiction for reasons set forth in Part IV of this opinion, *infra*. In any event, with regard to pendent jurisdiction, it would seldom seem appropriate or necessary to apply that doctrine to a diverse, as opposed to a non-diverse, defendant.
>
> Additionally, it is to be noted that this is not a case in which a plaintiff seeks to aggregate a federal claim and a nonfederal claim, both of which are stated against the same non-diverse defendant. Here, except for the jurisdictional amount, there is clearly diversity between each plaintiff on the one hand and the defendant on the other hand and there is concurrent federal and state jurisdiction as to Count II. Thus, if by aggregation, any one of the plaintiffs in this case can establish the existence of the $10,000 jurisdictional amount, then Section 1332(a) jurisdiction will exist as to such plaintiff's claims under both Counts I and II. If jurisdiction by way of aggregation is so established by a plaintiff herein, such a plaintiff can claim jurisdiction as to Count II not only under Section 1337 (*see* the discussion set forth in Part I of this opinion, *supra*) but also under Section 1332(a).
>
> Finally, it should be stressed that this is not a case in which a plaintiff has stated against a non-diverse defendant one claim which solely rests upon federal question jurisdiction under Section 1331, and a second claim which can only be entertained by a federal court if pendent jurisdiction exists. In such a case, if the federal question claim does not involve $10,000, the issue would be presented as to whether or not there could be aggregation of the federal question claim and the pendent jurisdiction claim. Nor does this case even involve a plaintiff who seeks aggregation of two claims stated by him against a diverse defendant, one claim based solely upon federal jurisdiction granted exclusively to a federal court, and a second claim based solely upon diversity (1332) jurisdiction, for the purposes of establishing federal jurisdiction over one or both of such two claims. This Court is not required herein to express any opinion with regard to either of the questions set forth in this paragraph of this footnote.

quired by 29 U.S.C. § 308(b). While plaintiffs may have sought that latter information in order to consider and/or assert their Count I claims, their causes of action under both Counts I and II are separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to the other count. Accordingly, as to Count I, pendent jurisdiction does not exist. United Mine Workers v. Gibbs, *supra*; Hurn v. Oursler, 289 U. S. 238, 245, 53 S.Ct. 586, 77 L.Ed. 1148 (1933).[12]

## V

During oral argument, this Court was informed that some of the claims asserted herein are the subject of proceedings in one or more Courts of the State of North Carolina, but that certain other of the claims asserted herein can no longer be effectively so asserted because of the running of limitations. On remand, the District Court will determine an orderly way for the federal and state court litigation to proceed. *Cf.* Amdur v. Lizars, 372 F.2d 103 (4th Cir. 1967).

For the reasons set forth above, the within case is hereby remanded for further proceedings in the Court below in accordance with this opinion.*

Circuit Judge WIDENER dissents from a portion of this opinion and files a dissenting opinion.

## * ADDENDUM

Because the dissenting opinion in this case was filed after the opinion of the Court had been filed, there was no opportunity to include appropriate footnotes to this Court's opinion with regard

12. It is also to be noted that *Gibbs* (at 725) specifically defines pendent jurisdiction in terms of the claims an individual plaintiff would ordinarily be expected to try in one lawsuit and thereby impliedly rejects any contention that pendent jurisdiction can exist over separate claims of separate plaintiffs.

1. While state law claims usually may only be asserted when diversity is present, the same cannot be said of the converse: this

to certain statements set forth in the dissenting opinion.

## I

Plaintiffs alleged jurisdiction under Count II pursuant to 28 U.S.C. § 1355. Accordingly, this Court examined that jurisdictional allegation, noted the complexity of the issue involved, and concluded not to make any determination with regard to it in view of the apparent presence of jurisdiction as to Count II under 28 U.S.C. § 1337. Instead, this Court suggested the presence of 1337 jurisdiction and required, upon remand, that the District Court afford to plaintiffs the opportunity pursuant to 28 U.S.C. § 1653 timely to amend their jurisdictional allegations with respect to Count II by alleging jurisdiction as to that Count under 28 U.S.C. § 1337.

## II

■ In Part I of his dissent, Judge Widener appears to differentiate, in terms of aggregation, this case from a case in which there are two diversity claims. Jurisdiction in this case either exists or does not exist, insofar as Count I is concerned, under 28 U.S.C. § 1332. Accordingly, as to Count I, the sole basis for possible jurisdiction is diversity jurisdiction. With regard to Count II, 29 U.S.C. § 308(c) provides that actions relating to 29 U.S.C. § 308 (b) may be brought in "any court of competent jurisdiction". The fact that jurisdiction is concurrently vested by Section 308(b) in federal as well as state courts does not mean that diversity jurisdiction is not present when the parties are in fact diverse as to their respective citizenship.[1] In other words,

Court knows of no case or policy requiring that diversity jurisdiction may only include state or foreign law claims and must exclude federal law claims. Federal law does on occasion control suits brought under diversity jurisdiction. 1A J. Moore's Federal Practice ¶¶ 0.305[3], 0.324 (1965). Undoubtedly, it rarely advantages a plaintiff, as it does here, to allege diversity jurisdiction when some other jurisdictional base is available.

the fact that the Congress conferred concurrent jurisdiction on the federal courts as well as on the state courts does not mean that when diversity is present, jurisdiction in a federal court cannot exist pursuant to 28 U.S.C. § 1332.[2] It is therefore immaterial, in terms of the aggregation of the claims under Counts I and II, that concurrent federal and state jurisdiction is conferred by Section 308(c) as to Count II. What we have here are two diversity claims.

### III

Insofar as Harrold v. Coble, *supra* is concerned, when that case was before the District Court, a question was raised as to whether the defendants were the "administrator" of the profit-sharing plan and trust agreement. The District Court held alternatively that they were, but that in any event plaintiff sued the persons whom he had been told were the "administrator" when he inquired and as a consequence those persons were estopped to controvert the advice they had given. In this Court in Harrold v. Coble, the question was whether the District Court abused its discretion when it failed to award plaintiff penalties. In the opinion filed by this Court in that case there is no discussion of the question as to who was the "administrator" or which of either of the District Court's theories in that case was the correct one in determining amenability of the defendant therein to suit.

Our opinion in this case is in conflict with the first of the District Court's alternative holdings in *Harrold*. We do not agree with that alternative holding. That is not to say, however, that Judge Stanley, sitting in the District Court in that case, was not entirely correct in concluding that the defendant therein was estopped to deny that it was the proper defendant. Further, there would not appear to be any inconsistency between what is written in the opinion in this case and what this Court stated in *Harrold*.

WIDENER, Circuit Judge (concurring and dissenting):

I must respectfully dissent, both as to the majority's disposition of the jurisdictional issues and as to its treatment of the merits of the plaintiffs' federal claim under 29 U.S.C. § 308(b).

As to the former, the majority would permit a plaintiff to aggregate his state and federal claims in order to meet the $10,000 jurisdictional requirement under 28 U.S.C. § 1332(a); for such a holding, I am unable to find support, either in case law or in reason. As to the latter, the majority's decision that the corporation, and not the committee, is the "administrator" of the profit sharing plan tends to confuse an already uncertain area of the law, given the statute's ambiguity and our prior holding in Harrold v. Coble, 380 F.2d 18 (4th Cir. 1967), affirming 261 F.Supp. 29 (M.D.N.C. 1966), that the committee under a similar plan was liable as the "administrator."

### I.

The plaintiffs are four former employees of a subsidiary of Winn-Dixie Stores, Inc. (Winn-Dixie). Their suit for damages against Winn-Dixie is based upon two counts. In Count I, they seek to recover for Winn-Dixie's failure to make payments alleged to be due them under the Employer's Profit Sharing Program of Winn-Dixie Stores, Inc.; in Count II, plaintiffs claim that Winn-Dixie, as "administrator" of that program, is liable under 29 U.S.C. § 308(b) for its failure to disclose certain information regarding the operation of that program. The Count I claim arises under State law, while the Count II claim arises under federal law. The plaintiffs allege federal court jurisdiction over the State claim under 28 U.S.C. § 1332(a) (diversity) and over the federal claim under 28 U.S.C. § 1355 (penalty incurred under Act of Congress).

The district court granted summary judgment for the defendant on both

---

2. While Congress may well have the power further to restrict diversity jurisdiction by limiting that jurisdiction to exclude claims created by federal law, it has not done so.

claims. As to Count I, the court found diversity jurisdiction lacking since no one of the four plaintiffs has more than $10,000 in controversy; as to Count II, the court found that Winn-Dixie was not the "administrator" of the program under 29 U.S.C. § 308(b). In view of its disposition of Count II, the federal claim, the district court specifically found it unnecessary to discuss whether the Count I claim might be supported by pendent jurisdiction.

With so much of the majority's opinion as may concern Hale's diversity claim under Count I, I am in substantial agreement. Under the test stated in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938), it must appear "to a legal certainty that the claim is really for less than the jurisdictional amount" to justify dismissal. See also McDonald v. Patton, 240 F.2d 424, 425–426 (4th Cir. 1957). Application of that test mandates reversal of summary judgment as to Hales.

As to Count II, however, while the majority's discussion of possible jurisdiction under 28 U.S.C. § 1355 may be abstractly correct, it is nevertheless dicta for it does not decide the point raised and concludes with the observation that "it is not necessary to determine whether Section 308(b) authorizes the imposition of a penalty." No holding in the case is based on this reasoning. The majority, then, for the first time in this case, raises the point, *sua sponte,* and holds that jurisdiction over Count II properly exists under 28 U.S.C. § 1337 (federal statute regulating commerce). While Section 1337 may provide a proper foundation for federal jurisdiction as to the Count II claims, in view of the fact that Section 1337 was neither pleaded, proved, suggested, nor argued either in the district court or on appeal, and the plaintiffs until the date of filing of the opinion had no idea the jurisdiction of the district court would be based on § 1337, a proper course as to Count II

would have been to remand the case to the district court without opinion on the merits of the point with leave to the plaintiffs to amend the jurisdictional allegations of the complaint, if they chose.[1] The majority did not even deign to use the procedure provided by 28 U.S.C. § 1653 and permit amendment in this court, which of course would have given defendants an opportunity to object, but decided a question which had not been raised and about which there was no case or controversy. U.S. Const. Art. III. While federal courts may and should notice lack of jurisdiction on their own motion, F.R.Civ.P. 12(h)(2), Burgess v. Charlottesville Savings & Loan Assoc., 477 F.2d 40 (4th Cir. 1973), the claim of jurisdiction is a different matter. It must be claimed and pleaded by the plaintiff, and affirmatively appear on the face of the complaint. F.R.Civ.P. 8(a); Koll v. Wayzata State Bank, 397 F.2d 124 (8th Cir. 1968); Chasis v. Progress Mfg. Co., 382 F.2d 773, 776 (3rd Cir. 1967); Barnhart v. Western Md. Ry. Co., 128 F.2d 709, 714 (4th Cir. 1942). Not utilizing the statute, 28 U.S.C. § 1653, available to allow amendment in this court, but deciding in the abstract a question not raised, and remanding to the district court for amendment there with the question already decided, is in my opinion not an appropriate function of an appellate court. The defendant should not be precluded from litigating a question to which it has not had the opportunity to address itself.

The majority in addition then announces an additional and alternative holding as to Hales, which is not alternative but necessary for Bridges, Eatman, and Tart to remain in court in their diversity claims. It is that each of the plaintiffs may aggregate his federal claim under Count II with his state claim under Count I to meet the requisite $10,000 amount in controversy required by § 1332(a). I emphasize that there is no disagreement that the state

1. Singleton v. Vance County School Board. 495 F.2d 1370 (4th Cir. 1974).

claims of neither Bridges nor Eatman nor Tart amount to as much as $10.000. The fact that joinder is permitted [2] does not mean that the requisite amount in controversy is present. Indeed, the decision of the majority, which effects a judicial change in this circuit in the definition of "matter in controversy," conflicts with the clear command of Rule 82 that "(t)hese rules shall not be construed to extend or limit the jurisdiction of the United States district courts. . . ."[3] See, e. g., Snyder v. Harris, 394 U.S. 332, 337, 338, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).[4] Similarly, the Supreme Court in Sibbach v. Wilson & Co., 312 U.S. 1, 10, 61 S.Ct. 422, 425, 85 L.Ed. 479 (1941) held that the rule making authority was limited by "the inability of a court, by rule, to extend or restrict the jurisdiction conferred by a statute."

Acting pursuant to the Constitution, Congress has created several bases for federal court jurisdiction. Among these are 28 U.S.C. § 1332(a) (diversity of citizenship and more than $10,000

2. Rule 18(a) of the Federal Rules of Civil Procedure provides as follows:

"A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as he has against an opposing party."

3. The Original Committee Note of 1937 to Rule 82 provides some insight of more than historical interest, and relevant here, as to why Congress felt Rule 82 was necessary:

"These rules grant extensive power of joining claims and counterclaims, in one action, but, as this rule states, such grant does not extend federal jurisdiction. The rule is declaratory of existing practice under the Federal Equity Rules with regard to such provisions as Equity Rule 26 on Joinder of Causes of Action and Equity Rule 30 on Counterclaims. Compare Shulman and Jaegerman, Some Jurisdictional Limitations on Federal Procedure, 45 Yale L.J. 393 (1936)."

See Notes of Advisory Committee on Rules found at 28 U.S.C. Rule 82, p. 51. See also 7 Moore's Federal Practice § 82.01 [2]; 12 Wright and Miller, Federal Practice and Procedure § 3141 (1973).

Judge Clark, a draftsman of the federal rules, once remarked in an opinion that ". . . jurisdiction is not extended by mere devices making possible more complete adjudication of issues in a single case, when based upon jurisdictional principles of long standing, even though the effectiveness of the new devices makes their use more frequent. (Citation omitted.) Obviously a mere broadening of the content of a single federal action must not be confused with the extension of federal power; otherwise, such recognized steps as the union of law and equity or the free joinder of counterclaims would be dragged into the ambit of jurisdictional prohibitions, while actually they compress and desirably reduce the bulk and amount of federal litigation."

Lesnik v. Public Industrials Corp., 144 F.2d 968, 973–974 (2d Cir. 1944).

4. See also Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). In Snyder v. Harris, the Supreme Court held that Federal Rule 23, as amended in 1966, did not change the scope of the statutory grant of district court jurisdiction, and that separate and distinct claims presented by and for various claimants in federal diversity actions may not be added together to provide the requisite $10,000 jurisdictional amount in controversy. 394 U.S. at 337–338. Noting that Congress had steadily increased through the years the jurisdictional amount requirement, the Court stated that Congress' purpose was "to check, to some degree, the rising caseload of the federal courts, especially with regard to the federal courts' diversity of citizenship jurisdiction." 394 U.S. at 339–340.

Through the years, the "matter in controversy" requirement of 28 U.S.C. § 1332(a) has steadily increased from $500 in 1789, 1 Stat. 78, to $2000 in 1887, 24 Stat. 552, to $3000 in 1911, 36 Stat. 1091, to the present level of $10,000, set in 1958, 72 Stat. 415. See Zahn, supra, at n. 1. The Supreme Court in Healy v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934), commenting on the purpose of Congress in successively raising the jurisdictional amount, stated:

"From the beginning suits between citizens of different states . . . could neither be brought in the federal courts nor removed to them, unless the value of the matter in controversy was more than a specified amount. . . . The policy of the statute calls for its strict construction. The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution."

amount in controversy); 28 U.S.C. § 1331(a) (federal question and more than $10,000 amount in controversy); 28 U.S.C. § 1337 (cases arising under a federal statute regulating commerce or protecting commerce against restraints in trade; no amount in controversy required); and 28 U.S.C. § 1355 (fine, penalty, or forfeiture by Act of Congress; no amount in controversy required). In the instant case, the plaintiff has joined claims which depend for their federal jurisdiction on § 1332(a) and quite possibly § 1337. And while acknowledging the amount in controversy in Court I falls below the required $10,000, for at least three of the plaintiffs, the majority holds that these plaintiffs may each aggregate the sums claimed in each count to meet the minimum jurisdictional requirement. This construction, I submit, is forbidden by Rule 82, and plainly violates. Congress' purpose in increasing over the years the jurisdictional amount in controversy.

At 6 Wright and Miller, Federal Practice and Procedure § 1588, at 807 (1971), the authors describe a fact situation indistinguishable from that before us in which diversity exists between A and B:

> "But what if A had joined his federal claim for patent infringement with a non-federal claim for unfair competition? The general rule is that when the basis of jurisdiction is a federal question, a party may not join a separate and distinct nonfederal claim that does not independently satisfy jurisdictional requirements. But, if the state claim is sufficiently related to the federal claim, as when it arises out of the same transaction or occurrence, the federal court has discretion to exercise pendent jurisdiction over the state claim." [Citations omitted]

3A Moore's Federal Practice, p. 1902, states the same proposition:

> "Where jurisdiction is predicated on a federal question as to any one claim, any joined claim for relief under state law requires an independent basis of jurisdiction unless the doctrine of pendent jurisdiction applies."

According to what is now settled doctrine, a single plaintiff may aggregate his claims arising under state law against an opposing party and thereby satisfy the monetary requirement for federal diversity jurisdiction. E. g., Stone v. Stone, 405 F.2d 94 (4th Cir. 1968); Provident Mutual Life Ins. Co. v. Parsons, 70 F.2d 863, 864 (4th Cir. 1934).[5] But federal courts have always required, where separate federal and nonfederal causes of action are alleged, that each have a jurisdictional basis, unless the nonfederal claim may be regarded as "pendent" to the federal claim.[6] E. g., Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); Geneva Furniture Co. v. Karpen, 238 U.S. 254, 35 S.Ct. 788, 59 L.Ed. 1295 (1915); Zalkind v. Scheinman, 139 F.2d 895 (2d Cir. 1943); Lewis v. Vendome Bags, 108 F.2d 16 (2d Cir. 1940); Snell v. Potters, 88 F.2d 611 (2d Cir. 1937); Newport Industries, Inc. v. Crosby Naval Stores, Inc., 139 F.2d 611 (5th Cir. 1944); General Motors Corp. v. Rubsam Corp., 65 F.2d 217 (6th Cir. 1933), cert. den. 290 U.S. 688, 54 S.Ct. 123, 78 L.Ed. 593 (1933); Musher Foundation v. Alba Trading Co., 127 F.2d 9 (2d Cir. 1942); Delman v. Federal Products Corp., 251 F.2d 123 (1st Cir. 1958).

The writers of both the current leading texts on the subject and every court I have found which has considered the question, with the possible isolated exception of one district court case[7] which was not appealed, have come to the conclusion that the rule established by the majority in this case is not tenable. Stone v. Stone, supra, the only case relied upon by the majority is particu-

---

5. See also cases collected at 1 Moore, Federal Practice ¶ 0.97, at 882–83 (1974); Wright, Federal Courts § 36 (1970).

6. See UMW v. Gibbs, 383 U.S. 715, 724–727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

7. Tsavdaridis v. Stevenson & Co., 165 F. Supp. 174 (S.D.N.Y.1958).

larly inapposite since it involved only aggregation of state claims, and then was decided on this basis against one defendant and as a matter akin to pendent jurisdiction as to the other, esp. pp. 96, 98. The case is not authority for aggregating amounts of federal and state claims to come under a "matter in controversy" provision of a jurisdictional statute. No federal claim existed in *Stone.*

In the present posture of the case, instead of deciding the matter of pendent jurisdiction, the better course would be to remand for the district court to determine if Count I, the nonfederal claim, might be pendent to Count II, the federal claim. As the Supreme Court observed in UMW v. Gibbs, 383 U.S. 715, 725–726, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966),

> "Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . . .' U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. . . . The state and federal claim must derive from a common nucleus of fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole. . . . [Pendent jurisdiction's] justification lies in considerations of judicial economy, convenience and fairness to litigants; . . ."

Properly, this matter of pendent jurisdiction should, I feel, be developed first at the district court level. See *Gibbs,* p. 728. The discretion should be that of the district court to be reviewed for abuse, not that of this court to exercise in the first instance.

## II.

In Harrold v. Coble, 380 F.2d 18 (4th Cir. 1967), this court affirmed a district court holding [8] that the "committee" and not the corporate employer was liable as "administrator" under 29 U.S.C. § 308(b). Today, this court construes a profit-sharing plan, identical in all material aspects with that in *Coble,* and reaches the opposite result. While possibly the majority reaches a result more consonant with federal disclosure requirements applicable to such plans, a study of the provisions of the profit-sharing agreements at issue in both cases indicates that the majority is very nearly overruling *Coble* rather than merely distinguishing it.

Those provisions of the Winn-Dixie plan which the majority finds determinative are duplicates of the earlier Coble plan. Indeed, many of the provisions upon which the decision of the majority depends appear in both plans *in haec verba.* Both give the company's respective boards of directors the power to appoint and remove members of the committee. Both plans give the company's respective boards of directors the power to amend program provisions, or the entire trust agreement. And both boards may remove the trustee, or even, should they wish, terminate the entire profit-sharing agreement. Neither plan designates, in explicit terms, the company or the committee as the person having "ultimate control." But, it seems clear that *Coble,* on these facts, should either be overruled by an en banc court or distinguished on firmer grounds. I am unable to say that our earlier decision is not to the contrary.

The statute defines the "administrator" of a profit-sharing plan as

8. 261 F.Supp. 29 (M.D.N.C.1966).

"(1) the person or persons designated by the terms of the plan or the collective bargaining agreement with responsibility for the ultimate control, disposition, or management of the money received or contributed; or

(2) in the absence of such designation, the person or persons actually responsible for the control, disposition, or management of the money received or contributed, irrespective of whether such control, disposition, or management is exercised directly or through an agent or trustee designated by such person or persons." 29 U.S.C. § 304(b)(1) and (2).

Clearly, the term "ultimate control" may refer only to a single person or body which has final determination as to how moneys contributed shall be disposed. Webster's New International Dictionary, 2nd Ed. And the majority's suggestion that both the committee and the company may be the administrator seems to strain the clear meaning of the statute. Similarly, this construction places those required to participate in the administration of profit-sharing plans under a considerable burden in determining, upon pain of civil and criminal liabilities, what the law requires of them.